**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **BMD CONTRACTORS, INC. and**      )<br>**FERGUSON ENTERPRISES, INC.**      )<br>                                      )<br>      **Plaintiffs,**      )<br>                                      )<br>      **vs.**      )<br>                                      )<br>**FIDELITY AND DEPOSIT COMPANY OF** )<br>**MARYLAND,**      )<br>                                      )<br>      **Defendant.** | **Case No. 1:09-cv-0121-TWP-DML** |

<u>**ENTRY ON MOTIONS FOR SUMMARY JUDGMENT**</u>

This matter, which relates to the scope of a surety's obligations under a bond, is before

the Court on the parties' Cross-Motions for Summary Judgment.  Specifically, the present

dispute stems from a subcontractor and vendor's allegations that they are entitled to payment

under a bond executed by a surety.  Currently, there are four Motions for Summary Judgment

pending in this action.  In this action, BMD Contractors, Inc., a subcontractor, ("<u>BMD</u>") and

Ferguson Enterprises, Inc., a vendor ("<u>Ferguson</u>") filed summary judgment motions against the

surety, Fidelity and Deposit Company of Maryland ("<u>F&D</u>") [Dkt. 126 and Dkt. 129]. F&D

countered by filing separate Motions for Summary Judgment against BMD [Dkt. 132] and

Ferguson [Dkt. 134].  For the reasons set forth below, F&D's Motions for Summary Judgment

[Dkt. 132 and Dkt. 134] are **GRANTED** in their entirety.  For the same reasons, BMD and

Ferguson's Motions for Summary Judgment [Dkt. 126 and Dkt. 129] are **DENIED** in their

entirety.

## I.  LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "Construction of a written contract is a question of law for which summary judgment is particularly appropriate." *Slutsky-Peltz Plumbing & Heating Co., Inc. v. Vincennes Cmty. School Corp.*, 556 N.E.2d 344, 345 (Ind. Ct. App. 1990) (citation omitted).

## II.  BACKGROUND

### A.    Factual Basis of the Dispute

In early 2007, Getrag Corporate Group, a manufacturer of automobile transmissions, created Getrag Transmission Manufacturing, LLC ("Getrag") for the purpose of manufacturing transmissions in Tipton, Indiana and supplying them to Chrysler, LLC ("the Project").  Getrag, the Project owner, entered into a contract with Walbridge Aldinger Company ("Walbridge"), whereby Walbridge would serve as the general contractor on the Project, spearheading the

construction of the Tipton manufacturing plant.

Thereafter, Walbridge entered into multiple contracts with IPS. One of the contracts required IPS to perform mechanical piping work for the Project pursuant to Bid Package 13 ("the IPS/Walbridge BP13 contract"). Article XXV of the IPS/Walbridge BP13 contract specifically required IPS to provide a performance and payment bond for the work contemplated by the IPS/Walbridge BP13 contract. On October 26, 2007, IPS and BMD entered into a subcontract, whereby BMD agreed to perform, in essence, the same work described in the IPS/Walbridge BP13 contract ("the IPS/BMD contract"). BMD, in turn, ordered goods, materials, and supplies from Ferguson for its needs.

Subsequently, on November 8, 2007, IPS and F&D executed Subcontract Labor and Material Payment Bond No. PRF7595531 (the "Bond"). The Bond listed IPS as the principal and F&D as the surety. The Bond only applies to IPS's payment obligations with respect to the work contemplated by the IPS/Walbridge BP13 contract.

BMD began work on the Project on November 15, 2007 – performing 99.9% of its work under the IPS/BMD contract and additional work pursuant to change orders – until a time coinciding with the genesis of the 2008 financial crisis. On October 23, 2008, all work on the Project ceased, Getrag filed for bankruptcy, and a cascade of missed payments trickled downstream. Predictably, these missed payments generated fallout. Walbridge, through other proceedings, is seeking roughly $40 million from Getrag for unpaid work that it (and its subcontractors) performed on the Project. IPS is owed over $11 million from Walbridge for the work IPS performed on the Project. To date, BMD is owed over $1.5 million under the IPS/BMD contract. Finally, Ferguson is owed roughly $700,000 for the goods, materials, and

supplies that it furnished to BMD.

Until work on the Project ceased, Walbridge had paid IPS all sums it received from Getrag for work and materials IPS furnished to the Project.  Similarly, IPS had paid BMD all sums it received from Walbridge for work and materials BMD furnished to the Project.

BMD and Ferguson have both filed mechanic's liens.  On October 30, 2008, Ferguson filed a "Sworn Statement and Notice of Intention to Hold Mechanic's Lien" against the Project property in an amount of roughly $1.4 million.  Similarly, on November 20, 2008, BMD recorded an "Amendment To Sworn Statement and Notice Of Intention to Hold Mechanic's Lien" against the Project property in an amount of over $3 million.  Finally, BMD has assigned to Ferguson a portion of its purported rights to make a claim under the Bond.

Overall, despite performing their required work under their contracts without incident, Ferguson and BMD were not paid in full.  When they demanded payment from IPS, IPS refused. Ferguson and BMD therefore sought payment under the Bond from F&D. When F&D refused, they filed the present suits.

## B.     Relevant Contract Provisions

This dispute is centered on the interaction among contract provisions found in (1) the Bond, (2) the IPS/BMD contract, and (3) the IPS/Walbridge BP13 contract.  Each notable provision is identified below.

### 1.     Key Provisions of the Bond

The Bond was issued in the amount of $5,656,140.00 and requires F&D to make payments due claimants from IPS on the IPS/Walbridge BP13 contract under certain circumstances.  Specifically, the Bond states:

**NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, That if the Principal shall promptly make payments to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the subcontract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject to the following conditions.**

The Bond goes on to define a *claimant* as,

**one having a <u>direct contract</u> with the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract.**

(Emphasis added).  The Bond then describes a claimant's right to sue under the Bond:

**The above-named Principal and Surety hereby jointly and severally agree with the Obligee that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be <u>justly due</u> claimant, and have execution thereon.**

(Emphasis added).

> ### 2.  *Key Provisions of the IPS/BMD contract*

From F&D's vantage point, the paramount provision in this dispute is found in the IPS/BMD contract.  F&D argues that this provision is a standard "pay-if-paid" clause.  Specifically, page 2 of IPS/BMD contract states, "**IT IS EXPRESSLY AGREED THAT OWNER'S ACCEPTANCE OF SUBCONTRACTOR'S WORK AND PAYMENT TO THE CONTRACTOR FOR THE SUBCONTRACTOR'S WORK ARE <u>CONDITIONS PRECEDENT</u> TO THE SUBCONTRACTOR'S RIGHT TO PAYMENTS BY THE CONTRACTOR**."  Similar language is repeated throughout the IPS/BMD contract.  For instance, Article 2(g) provides, "it is a condition precedent to Contractor's obligation to make

final payments to Subcontractor that Owner shall have tendered full payment for Subcontractor's

Work to Contractor and that Contractor shall have accepted such full payment from Owner."

More generally, Article 2(k) provides, "Contractor may withhold payment from Subcontractor,

in whole or in part, for the same reasons and under the same circumstances as Owner may

withhold payment from Contractor."

F&D also maintains that the IPS/BMD contract contains a "flow-down" provision, which

effectively binds BMD to the terms of the Walbridge/IPS BP13 contract, requiring BMD to

assume from IPS all of IPS's obligation toward Walbridge in the Walbridge/IPS BP 13 contract.

In relevant part, Article 23 of the IPS/BMD contract provides:

> **Subcontractor is bound to Contractor by the terms of the Contract
> Documents and assumes toward Contractor, with respect to
> Subcontractor's work, all of the obligations and responsibilities that
> Contractor, by the Contract Documents, has assumed toward
> Owner**.

Specifically, Article 3 defines Contract Documents as including "the Agreement between Owner

and Contractor."

### 3.   Key Provisions of the IPS/Walbridge BP13 contract

Unquestionably, the IPS/Walbridge BP13 contract contains a garden-variety "pay-if-

paid"

provision.  Article XXII provides:

> **[IPS] acknowledges that it has considered [Getrag's] solvency and
> [Getrag's] ability to perform the terms of the contract with [Walbridge]
> before entering into this Subcontract. [IPS] acknowledges that it relies on
> the credit and ability to pay of [Getrag], and not [Walbridge], for
> payment for work performed thereunder. [IPS] is entering into this
> Subcontract with the full understanding that [IPS] is accepting the risk
> that [Getrag] may be unable to perform the terms of its contract with
> [Walbridge]. [IPS] agrees that as a condition precedent to [Walbridge's]**

6

> **obligation to make any payments to [IPS], [Walbridge] must receive payment from [Getrag] ...**

Additional facts are included below as needed.

## III.  DISCUSSION

Surety law fundamentals and contract interpretation principles lie at the heart of this dispute.  Sitting in diversity, this Court must apply its best judgment in an effort to anticipate how the Indiana Supreme Court would rule on these issues. *Hirata Corp. v. J.B. Oxford & Co.*, 193 F.R.D. 589, 599 (S.D. Ind. 2000).  The parties agree that the Court must apply Indiana substantive law.  Given the dearth of reported Indiana cases *directly* on-point, however, the Court may consult a variety of sources, including "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending" to show how the Indiana Supreme Court would resolve this dispute. *See Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 635 (7th Cir. 2007) (citations and internal quotations omitted).

**A.**   **What is the effect of the alleged "pay-if-paid" clause in the IPS/BMD contract?**

In contract cases like this one, the Court's primary objective is to effectuate the intent of the parties at the time the contract was made, which is determined by examining the language the parties used to express their rights and duties. *Trustcorp Mortg. Co. v. Metro Mortg. Co.*, 867 N.E.2d 203, 212-13 (Ind. Ct. App. 2007).  The Court must read the contract as a whole, construing language to give meaning to all of the contract's words, terms, and phrases.  *Id.* at 213.  Likewise, the Court must accept a contract interpretation that harmonizes provisions, not one that places provisions in conflict. *Id.*

Here, the parties dispute the meaning of various contract provision, but this is hardly

7

unusual.  The law is well-settled that differing, self-interested interpretations do not create

ambiguity. *See Ind. Dept. of Transp. v. Shelly & Sands, Inc.*, 756 N.E.2d 1063, 1069 (Ind. Ct.

App. 2001).  Instead, a contract is ambiguous only when it is "susceptible to more than one

interpretation and reasonably intelligent persons would honestly differ as to its meaning." *Id*. at

1069-70.  Absent ambiguity, the Court must give the contract terms a plain and ordinary

meaning. *Id*. at 1070.

With these principles in mind, the Court turns to the alleged "pay-if-paid" provision in

the IPS/BMD contract.  Specifically, this provision states,  "**IT IS EXPRESSLY AGREED**

**THAT OWNER'S ACCEPTANCE OF SUBCONTRACTOR'S WORK AND PAYMENT**

**TO THE CONTRACTOR FOR THE SUBCONTRACTOR'S WORK ARE <u>CONDITIONS</u>**

**<u>PRECEDENT</u> TO THE SUBCONTRACTOR'S RIGHT TO PAYMENTS BY  THE**

**CONTRACTOR**." (emphasis added).  F&D maintains that this is an unambiguous garden-

variety "pay-if-paid" clause.  By contrast, Ferguson and BMD[1] insist that the clause is a more

forgiving "pay-when-paid" clause.  Alternatively, BMD and Ferguson argue that the clause is

ambiguous and, therefore, must be construed against F&D. *See In re Kemper Ins. Companies*,

819 N.E.2d 485, 490 (Ind. Ct. App. 2004) (ambiguities in surety contracts are construed strictly

against the surety and in favor of the person to be protected).

The difference between a "pay-if-paid" clause and a "pay-when-paid" clause is vast.  To

appreciate the difference, some background on construction contracts is instructive.  Like many

contracts, construction contracts typically operate as an exchange of capital for work and

---

[1]BMD and Ferguson made separate arguments in their briefing.  Nonetheless, for ease of
reference, the Court may refer to an argument as "BMD and Ferguson's" even though only one
of the parties actually made the argument.

materials.  Owners provide capital; contractors, subcontractors, and suppliers provide work and materials.  Mindful of the financially devastating consequences of not getting paid for completed work, contractors are loath to bear the full risk of the owner's inability or refusal to pay. Consequently, provisions in construction contracts are often used to shift or curb risk. *See* James Acret & Annette Davis Perrochet, CONSTRUCTION LITIGATION HANDBOOK 2d § 4:4 *Payment Upon Payment*.

This desire to shift risk was the impetus for the creation of the "pay-if-paid" clause, which is a contract provision clearly stating that the subcontractor will be paid only when the contractor receives payment from the owner. 17B C.J.S. *Contracts* § 579.  Generally, "Where the contract . . . *clearly provides* that payments to the subcontractor will not be made until the general contractor is paid for the work by the owner, the receipt of such payments by the owner is a *condition precedent* to the obligation to make payments to the subcontractor." *Id*. (emphasis added).  Conversely, a "pay-when-paid" clause does not reallocate risk, but instead acts as a mere delay mechanism, postponing the time for payment until the occurrence of a certain event *or for a reasonable period of time*. *Gilbane Bldg. Co. v. Brisk Waterproofing Co., Inc.*, 585 A.2d 248, 250 (Md. Ct. Spec. App.1991).  Thus, like their names suggest, a "pay-when-paid" clause makes payment to the subcontractor a matter of *when*, not a matter of *if*, whereas a "pay-if-paid" clause erects a complete condition precedent defense, making payment to the subcontractor a matter of *if*.

Examples of the "pay-if-paid" clause versus the "pay-when-paid" clause are useful.  As one commentator has noted, "A typical 'pay-if-paid' clause might read: Contractor's receipt of payment from the owner is a condition precedent to contractor's obligation to make payment to

the subcontractor; the subcontractor expressly assumes the risk of the owner's nonpayment and the subcontract price includes the risk." Robert F. Carney & Adam Cizek, *Payment Provisions in Construction Contracts and Construction Trust Fund Statutes: A Fifty-State Survey*, 24 CONSTRUCTION LAW 5 (2004). By contrast, "A typical 'pay-when-paid' clause might read: Contractor shall pay subcontractor within seven days of contractor's receipt of payment from the owner." *Id.*

Although no universal consensus exists on this point, courts throughout the country have ascribed significant weight to the use of the precise term *condition precedent*. *See Gilbane*, 585 A.2d 248 (contract making receipt of funds by contractor a condition precedent to payment of amounts due subcontractor precluded recovery by subcontractor following bankruptcy of owner); *Berkel & Co. Contractors v. Christman Co.*, 533 N.W.2d 838 (Mich. Ct. App.1995) (enforcing "pay-if-paid" provision where contract provided, "the receipt of such payments by [general contractor] being a condition precedent to payments to the subcontractor."); *L. Harvey Concrete, Inc. v. Agro Constr. & Supply Co.*, 939 P.2d 811, 813-14 (Ariz. Ct. App. 1997) (enforcing "pay-if-paid" provision where contract provided that receipt of payment by general contractor was a "condition precedent" to payment of the subcontractor). To a lesser degree, this Court has weighed in on the debate, recognizing: "Courts that have enforced [pay-if-paid] provisions do so when the provisions explicitly provide that payment to the contractor by the owner is a condition precedent to payment to the subcontractor by the contractor." *Envirocorp. Well Services, Inc. v. Camp Dresser & McKee, Inc.*, 2000 WL 1617840, at * 5-6 (S.D. Ind. Oct. 25, 2000) (finding that the plain language of the provision was a mere payment timing provision, not a provision erecting a condition precedent).

10

The IPS/BMD contract expressly uses the term *condition precedent*.  In legal parlance, condition precedent is a term of art with an indisputable meaning: "An act or event, other than a lapse of time, that *must exist or occur* before a duty to perform something promised arises." BLACK'S LAW DICTIONARY 128 (3d pocket ed.) (emphasis added); *see also Cricket Ridge, LLC v. Wright*, 880 N.E.2d 1271, 1278 (Ind. Ct. App. 2008) (condition precedent is condition "that <u>must be fulfilled</u> before the duty to perform a specific obligation arises.").  Here, the IPS/BMD contract plainly provides that payment from Getrag to IPS for BMD's work is a "condition precedent" to BMD's right to payment.  In other words, the Court finds that the IPS/BMD contract contains an unambiguous "pay-if-paid" clause.  Thus, IPS has no current payment obligation to BMD under the IPS/BMD contract.

BMD and Ferguson counter that, in essence, the clause was not as comprehensive or as clear as it should have been.  Indeed, the "pay-if-paid" clause could have included additional language explicitly shifting risk.  However, this argument effectively invites the Court to elevate form over substance.  Condition precedent is a clear and unambiguous term, and the Court is not at liberty to ignore clear and unambiguous language evincing the intent of the parties.  Thus, where language is clear and unambiguous, the Court will not indulge in a hyper-technical, unduly-critical construction of the clause. *See Mid America Constr. Mgmt., Inc. v. Mastec North America, Inc.*, 436 F.3d 1257, 1263 (10th Cir. 2006) (determining that clause, similar to the one at the center of the present dispute, was "pay-if-paid," noting "the Subcontract Agreement's failure to say all that it might have said is not enough to throw the intent of the contracting parties in doubt.").  At bottom, the clause at issue is a "pay-if-paid" clause.

**B.**     **<u>Does the "pay-if-paid" clause violate Indiana public policy?</u>**

BMD and Ferguson argue that even if the "pay-if-pay" clause is unambiguous, the Court should refuse to enforce the provision on public policy grounds. According to BMD and Ferguson, Indiana's legislature has signaled an unmistakable aversion to "pay-if-paid" clauses, as evidenced by the enactment of two statutes: Ind. Code § 32-28-3-16(b) and Ind. Code § 32-28-3-18(c).

Indiana courts have articulated clear guidelines for analyzing statute-based public policy arguments. Indeed, "Despite the very strong presumption of enforceability, courts have refused to enforce private agreements that contravene statute." *Shelly & Sands*, 756 N.E.2d at 1073 (citations and internal quotations omitted). However, "[b]ecause Indiana values the freedom to contract so highly, we will not find that a contract contravenes a statute unless the language of the implicated statute is clear and unambiguous that the legislature intended that the court not be available for either party to enforce a bargain made in violation thereof." *Id.* (quoting *Cont'l Basketball Ass'n, Inc. v. Ellenstein Enters., Inc.*, 669 N.E.2d 134, 140 (Ind. 1996)).

With these principles in mind, the Court finds that neither statute cited by BMD and Ferguson clearly and unambiguously establishes that the Indiana legislature intended to invalidate "pay-if-paid" provisions in the present context.

First, Ind. Code § 32-28-3-16(b) provides:

> **(b) a provision in a contract for the improvement of real estate in Indiana is void if the provision requires a person . . . who furnishes labor, materials, or machinery to waive a right to:**
> > **. . .**
> > **(2) a claim against payment bond;**
>
> **before the person is paid for the labor or materials furnished.**

The Court finds it noteworthy that this provision does not mention "pay-if-paid" clauses.

Instead, the provision only applies to waivers of payment bond claims.  Here, the IPS/BMD

contract did not require BMD to waive its right to assert a claim against the Bond.  As F&D

notes, it is not arguing that BMD waived rights against the Bond.  Rather, "BMD's rights against

the Bond have simply not arisen, since IPS cannot be in default of its obligation to pay BMD

unless it is first paid for BMD's work." [Dkt. 171 at 20].  The Court agrees.

Second, Ind. Code § 32-28-3-18(c) provides:

> **An obligor's receipt of payment from a third person may not:**
> **(1) be a condition precedent to;**
> **. . .**
> **the provider's right to record or foreclose a lien against the real**
> **estate that was improved by the provider's labor, material, or**
> **equipment.**

Undoubtedly, this provision addresses "pay-if-paid" provisions, but only in the context of the

provider's right to record a lien.  This statute – unlike Ind. Code § 32-28-3-16(b) –  does not

mention bonds.  The Court finds this omission meaningful. *See City of Crown Point v. Misty*

*Woods Properties, LLC*, 864 N.E.2d 1069, 1076 (Ind. Ct. App. 2007) ("It is just as important to

recognize what a statute does not say as it is to recognize what it does say); *Adrianova v. Indiana*

*Family & Soc. Services Admin.*, 799 N.E.2d 5, 16 (Ind. Ct. App. 2003) ("When language is used

in one section of a statute, but omitted from others, courts indulge a general presumption that

Congress acted intentionally and purposely in so doing.").

The Court simply cannot find that the Indiana legislature clearly and unambiguously

sought to render "pay-if-paid" clauses unenforceable under the present circumstances.  This

decision is further reinforced by the fact that Indiana unquestionably places a premium on

freedom to contract. *See, e.g., Zollman v. Geneva Leasing Associates, Inc.*, 780 N.E.2d 387, 391

(Ind. Ct. App. 2002) (As a general rule, Indiana "allows competent adults the utmost liberty in

entering into contracts that, when entered into freely and voluntarily, will be enforced by the courts.").  Under the contract, BMD and Ferguson's right to record or foreclose a lien remains in tact.

**C.**   **IPS is not liable under the IPS/BMD contract.  Can F&D still be liable under the Bond?**

Having established that IPS is not liable under the IPS/BMD contract, the Court must now turn to the more vexing – and disputed – question: Is F&D, the surety, still liable under the Bond?  While Indiana has not addressed this issue in the context of a "pay-if-paid" clause, bedrock precepts of Indiana surety law offer useful guidance as to how the Indiana Supreme Court would resolve this issue.

### 1.   *In Indiana, is a surety's liability limited to that of its principal?*

It is well-established that a surety contract is distinct from a mere insurance contract. The Indiana Supreme Court has recognized, "While insurance contracts are in many respects similar to surety contracts . . . there is a very wide difference between the two kinds of contracts."*Meyer v. Building & Realty Service Co.*, 196 N.E. 250, 253 (Ind. 1935).  Specifically, "Insurance has been defined as a contract whereby one undertakes to indemnify another against loss, damage or liability arising from an unknown or contingent event," whereas "a contract of suretyship is one to answer for the debt, default, or miscarriage of another." *Id*. at 253-54 (emphasis added).  Indeed, "[a] contract of surety creates a tripartite relation [among] the party secured, the principal obligor, and the party secondarily liable. *Id*. at 253. (emphasis added).

Moreover, "[g]enerally, a surety's liability is no greater than the principal's." *In re Kemper*, 819 N.E.2d at 491.  This is logical; after all, if a surety's duty is triggered only by the *debt, default, or miscarriage* of its principal, then the surety's liability must be coextensive with that of its principal.  For this same reason, the Indiana Supreme Court has recognized that the

"defenses of a surety cannot be disassociated from [the tripartite relationship described above]."
*Meyer*, 196 N.E. at 253.

These positions mirror basic hornbook law. *See* 74 AM. JUR. 2d *Suretyship* § 88 ("As a general rule, a surety on a bond is not liable unless the principal is, and, therefore, he may plead any defense available to the principal."); 74 AM. JUR. 2d *Suretyship* § 20 ("Since the obligation of a surety is accessory to that of a principal debtor, it follows that the liability of the surety is ordinarily measured by the liability of the principal, and <u>cannot exceed it</u>."); 72 C.J.S. *Principal and Surety* § 79 ("In the absence of limitations or restrictions contained in the contract, the liability of a surety is generally coextensive with that of the principal" and "a surety is not liable to an obligee unless its principal is also liable").  Overall, hornbook law and decisions by Indiana courts reinforce the position that because IPS has not defaulted on its obligations to BMD, F&D's obligations under the Bond have not yet been triggered.

### 2. In Indiana, should the "pay-if-paid" clause found in the IPS/BMD contract be construed with the Bond as a single instrument?

Here, the Bond does not expressly incorporate the "pay-if-paid" clause from IPS/BMD contract; nor does the Bond specifically mention the terms of the IPS/BMD contract.  BMD and Ferguson argue that this omission is fatal; F&D, of course, vehemently disagrees.  To assess the validity of the parties' arguments, the Court must again start its analysis reviewing the fundamentals of  Indiana surety law.  Long ago, the Indiana Supreme Court recognized that when a bond and a contract are executed concurrently, they "must be construed together." *Weed Sewing Machine Co. v. Winchell*, 7 N.E. 881, 883 (Ind. 1886).  The Supreme Court continued, "The bond having been executed presumptively with reference to, and to secure the performance of, the contract of agency, the liability of the sureties cannot be extended so as to embrace

transactions beyond the scope of the contract with which it was executed." *Id.*  More recently, the Indiana Court of Appeals noted, "When a suretyship contract is entered along with another instrument, both instruments must be construed together." *Vanek v. Indiana Nat'l Bank*, 540 N.E.2d 81, 84 (Ind. Ct. App. 1989) (citing *Garco Industrial Equipment Co. v. Mallory*, 485 N.E.2d 652 (Ind. Ct. App. 1985)).

Thus, "[w]here a bond and another instrument relate to and form one and the same transaction . . . such instrument or agreement becomes a part of the bond, and the two should be construed as a unit." 11 C.J.S. *Bonds* § 44.  Similarly, "a bond given by a contractor should be construed together with the contract or undertaking it is intended to secure." *Id.*; *see also* 4 IND. LAW ENCYCL. *Bonds* § 11 (2010) ("Thus, where a bond is given to secure the performance of a contract . . . such contract and the bond are to be construed as a single instrument and must be construed together in determining liability under a bond, and, if the terms of the bond vary from the provisions of the collateral contract, the terms of the latter will control.").

Given these standards, the Court believes the Indiana Supreme Court would not analyze the Bond in a vacuum, but would instead analyze it in concert with the contracts relating to the undertaking the Bond was intended to secure.  When the Court does so, the conclusion is inescapable: F&D is not liable under the Bond because IPS has no liability under the IPS/BMD contract.  A contrary ruling would require the Court to abrogate or turn a blind eye to established Indiana surety law.

This position is fortified by recent persuasively-reasoned decisions from the West Virginia Supreme Court and the District Court of New Jersey.  In *Wellington Power Corp. v. CNA Surety Corp.*, 614 S.E.2d 680 (W. Va. 2005), under circumstances similar to those at issue,

the West Virginia Supreme Court ruled that a surety had no liability to subcontractors due to a "pay-if-paid" clause in the contract between contractor and subcontractors. Citing principles of surety law similar to those embraced by Indiana, *Wellington* ruled that "this Court's suretyship law prevents an action against [a surety] where [the principal] is not liable to Plaintiffs based on the pay-if-paid condition precedent clause." *Id*. at 689.

A more recent case, *Fixture Specialists, Inc. v. Global Constr. LLC*, 2009 WL 904031 (D.N.J. March 30, 2009), reached an identical conclusion under similar facts. In making its determination, the District of New Jersey highlighted that a surety's liability is coextensive with its principal's and that a surety's liability is only triggered by the principal's default. *Id*. at *10 ("the surety will not be liable on the surety contract if the principal has not incurred liability on the primary contract."). Significantly, the court also emphasized that courts reaching contrary decisions do not distinguish surety bonds from insurance policies – a distinction that New Jersey recognizes. *Id*. As discussed above, Indiana also recognizes this important distinction, which cannot be ignored.

BMD and Ferguson argue that because the Bond makes no reference to the "pay-if-paid" clause, they are entitled to payment from F&D under the plain terms of the Bond. A ruling for F&D, their argument goes, would nullify the whole purpose of a payment bond. Indeed, their position is backed by considerable support, including a case from the Seventh Circuit that purports to apply Indiana law. *See Culligan Corp. v. Transamerica Ins. Co.*, 580 F.2d 251 (7th Cir. 1978) (surety's liability on bond was not affected by dispute between the prime contractor and the owner because conditions of the bond were met; also, the inclusion of a subcontract by name merely served as a reference and did not change or modify the terms of the bond); *see also*

*Brown & Kerr Inc. v. St. Paul Fire & Marine Ins. Co.*, 940 F. Supp. 1245, 1249 (N.D. Ill. 1996)
(noting that a bond and a subcontract are two separate agreements; surety cannot avoid payment
because subcontractor could not recover from contractor); *OBS Co., Inc. v. Pace Constr. Corp.*,
558 So.2d 404, 408 (Fla. 1990) ("it would be inequitable to nullify the bonding company's
liability because the owner has not paid the contractor"); 17 AM. JUR. 2d *Contractors' Bonds* § 5
(citing *Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717 (4th Cir. 2000) for the proposition
that "a surety for a general contractor cannot assert the payment language in a subcontract as a
defense to liability on a contract payment bond when the surety has not expressly incorporated
such language into a bond, where the effect of permitting such a defense would be to defeat the
very purpose of the payment bond.").

　　　Arguably, Plaintiff's Seventh Circuit authority, the *Culligan* decision, is forceful.
Nonetheless, the Court is not persuaded by *Culligan* for two key reasons.  First, *Culligan* is
distinguishable. Here, the Bond contains terms not found in the bond at issue in *Culligan*.
Specifically, in the present dispute, the claimant is only entitled to sums that are "justly due,"
whereas the bond in *Culligan* contained no such condition.  This language is important because it
necessarily implicates the existence of an underlying contract.  Under the circumstances, the
phrase "justly due" can only mean justly due from the IPS/BMD contract.  The IPS/BMD
contract, after all, provides the only basis for BMD being "due" any payment at all. *See, e.g.,*
*Taylor Const., Inc. v. ABT*, 163 F.3d 1119, 1122 (9th Cir. 1998) ("Long standing precedent
confirms that 'sums justly due' means the sums due the party under the bonded contract.");
*United States for Use and Benefit of Woodington Elec. Co. v. United Pac. Ins. Co.*, 545 F.2d
1381, 1383 (4th Cir. 1976) ("sums justly due" must be "determined by reference to the

18

subcontract.").

Second, *Culligan* was decided over thirty years ago at a time when "pay-if-paid" clause law was in its relative infancy. Since then, not only has the law in this precise area been fleshed out, it has evolved. Perhaps for this reason, *Culligan* did not cite to many of the Indiana cases articulating well-settled surety law principles. Specifically, *Culligan* failed to note the following rules grounded in Indiana law: Liability under a surety contract is triggered by the default of the principal; a bond must be construed together with its underlying contract as a single instrument; a surety's liability is coextensive with its principal's; and a surety may avail itself of the principal's potential defenses. These omissions reduce *Culligan's* persuasiveness. *See Trytko v. Hubball, Inc.*, 28 F.3d 715, 719-20 (7th Cir. 1994) (court must apply Indiana law as declared by the Supreme Court, or in the absence of a statement by that court, by its intermediate appellate courts).

To recapitulate, Indiana state court decisions have clearly articulated numerous tenets of surety law, including: (1) a surety contract is different than a run of the mill insurance contract; (2) a surety's liability is triggered by its principal's default; (3) a surety can avail itself of all defenses available to the principal; (4) the principal and the surety's liability are coextensive; and (5) a bond and its underlying instrument must be construed together.

Only one conclusion allows the Court to remain faithful to these principles: Accordingly, the Court finds that under the present circumstances, Indiana law supports the view that a condition precedent in the contract between a contractor and subcontractor precludes the subcontractor from proceeding against the surety, because the condition has not yet been satisfied. F&D simply cannot be held liable under the Bond where IPS is not liable under its subcontract

19

with BMD.  For this reason, F&D's argument carries the day against BMD.  Moreover, Ferguson, as BMD's assignee, stands in BMD's shoes. *Pettit v. Pettit*, 626 N.E.2d 444, 447 (Ind. 1993) (It is a "well-settled principle of contract law that a valid assignment gives the assignee neither greater nor lesser rights than those held by the assignor.").  Therefore, F&D must also prevail against Ferguson.

Given the Court's ruling, it need not analyze additional arguments raised by the parties, such as those related to waiver, assignment, or the effect of the "flow-down" provision.

## **CONCLUSION**

For the reasons set out above, the Court **GRANTS** F&D's Motions for Summary Judgment [Dkt. 132 and Dkt. 134] and **DENIES** BMD and Ferguson's Motion for Summary Judgment [Dkt. 126 and Dkt. 129].  A separate judgment shall issue accompanying this order.

SO ORDERED:   01/13/2011

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Copies to:

**E. Davis Coots**
COOTS HENKE & WHEELER, P.C.
dcoots@chwlaw.com,jjackson@chwlaw.com

**Thomas O. Crist**
BENESCH FRIEDLANDER COPLAN & ARONOFF
tcrist@beneschlaw.com,docket@beneschlaw.com,canderson@beneschlaw.com

**Brandi A. Gibson**
COOTS HENKE & WHEELER, P.C.
bgibson@chwlaw.com,eprice@chwlaw.com

**Mark Ryan Hertrick**
BENESCH FRIEDLANDER COPLAN & ARONOFF LLP
mhertrick@beneschlaw.com,svasquez@beneschlaw.com

**Kristopher N. Kazmierczak**
KATZ & KORIN P.C.
kkazmierczak@katzkorin.com,vellis@katzkorin.com

**William Irwin Kohn**
BENESCH FRIEDLANDER COPLAN & ARONOFF LLP
wkohn@beneschlaw.com,lbehra@beneschlaw.com,docket@beneschlaw.com,cgreen@beneschlaw.com,afoulkrod@beneschlaw.com

**Offer Korin**
KATZ & KORIN P.C.
okorin@katzkorin.com,cmurphy@katzkorin.com

**Andrielle Marie Metzel**
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
ametzel@beneschlaw.com,docket@beneschlaw.com,ecf@beneschlaw.com,ccanny@beneschlaw.com,cmurphy@beneschlaw.com

**James William Weikamp**
BENESCH FRIEDLANDER COPLAN & ARONOFF LLP
jweikamp@beneschlaw.com